# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――― x

JAY SOLEM, an individual,

      Plaintiff,

v.

JOHN DOE, an individual;
PEKEN GLOBAL LIMITED d/b/a KuCoin, a
foreign company; and
CHN GROUP, LLC d/b/a ChangeNOW, a
foreign limited liability company;

      Defendants.

:   Civil Action No.

:   COMPLAINT

:

:   <u>DEMAND FOR JURY TRIAL</u>

:

x

―――――――――――――――――――――――

## <u>COMPLAINT FOR DAMAGES and EQUITABLE RELIEF</u>

Plaintiff JAY SOLEM, an individual (hereafter referred to as "Plaintiff"), by and through undersigned counsel, hereby sues Defendants JOHN DOE, an individual; PEKEN GLOBAL LIMITED d/b/a KuCoin, a foreign company ("PEKEN GLOBAL" or "KUCOIN"); and CHN GROUP, LLC d/b/a ChangeNOW, a foreign limited liability company ("ChangeNOW"); for damages and equitable relief. As grounds therefor, Plaintiff alleges the following:

## <u>PRELIMINARY STATEMENT</u>

1.    This action arises from a fraudulent scheme that sought to, and ultimately did, steal approximately Two Million Five Hundred Thousand Dollars ($2,500,000.00) worth of cryptocurrency from Plaintiff.

2.    JOHN DOE played a material role in the scheme to steal Plaintiff's assets and currently possesses -- in accounts maintained at cryptocurrency exchanges KUCOIN, ChangeNOW, and elsewhere – Plaintiff's stolen property.

3.    Plaintiff brings this lawsuit to recover his stolen assets.

## PARTIES, JURISDICTION AND VENUE

### THE PARTIES

### Plaintiff

4.      Plaintiff JAY SOLEM is an individual domiciled in Anoka County, Minnesota, is a citizen of the state of Minnesota, and is *sui juris*.

5.      At no time has Plaintiff ever held an account with KUCOIN or ever agreed to any terms of use that KUCOIN imposes upon its accountholders.

6.      Likewise, at no time has Plaintiff ever held an account with ChangeNOW or ever agreed to any terms of use that ChangeNOW imposes upon its accountholders.

### Defendants

### John Doe

7.      Defendant JOHN DOE is an individual and, upon information and belief, is *sui juris*.

### KuCoin

8.      Defendant PEKEN GLOBAL is a foreign entity which, upon information and belief, is registered and headquartered at Room 306, Victoria House, Victoria Mahe, Seychelles. Upon information and belief, KUCOIN has never had a physical presence in either the Seychelles or the Cayman Islands, though, where it is incorporated.  KUCOIN's employees and physical operations are located in Singapore and China, among other places.

9.      Since in or about September 2019, PEKEN GLOBAL has operated the KUCOIN cryptocurrency trading platform.

10.     At all times material hereto, JOHN DOE has maintained -- and continues to maintain as of the date of this filing -- an account at KUCOIN in which JOHN DOE holds a portion of the cryptocurrency stolen from Plaintiff.

11.     Upon information and belief, KUCOIN failed to apply "Know Your Customer" (KYC) and Anti-Money Laundering (AML) procedures as required by statutory law to detect the lawful ownership of the cryptocurrency properly belonging to Plaintiff.

### ChangeNOW

12.     Defendant ChangeNOW is a foreign non-custodial cryptocurrency exchange service registered and organized in Saint Vincent and the Grenadines.  Having served more than a million users on a 24-hour trading platform since it was launched in 2017, ChangeNOW allows its accountholders to trade over 350 cryptocurrency assets (including bitcoin) and almost 60 fiat assets.

13.     ChangeNOW is integrated into multiple cryptocurrency trading platforms, including Binance, Bitfinex, HTX, OKEx, and KUCOIN.  At the moment of the trade, ChangeNOW chooses the best exchange rate on the market at any given moment and offer it to its accountholders.

14.     Although ChangeNOW is primarily a non-custodial service, it does offer its users a cryptocurrency wallet (NOW Wallet) that allows users to store their assets on their own computer devices.  ChangeNOW promotes on its website that it does not collect any personal data of its NOW Wallet users.

15.     While citizens of the United States are not permitted to create accounts on ChangeNOW, users *are* permitted to use ChangeNOW in the United States after they have created an account that is registered to an address outside the United States.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

16.     Additionally, ChangeNOW allows U.S. customers to trade on its exchange with commonly used technology such as virtual private networks (VPNs) that readily circumvent any IP address restrictions ChangeNOW purports to employ to prevent U.S.-based users.

17.     ChangeNOW even publishes on its website a constantly-updating world map showing where its users have engaged in recent transactions.  Many of those transactions occur in the United States, including the one indicated below in this jurisdiction.



## **Other Liable Persons/Entities**

18.     In addition to Defendants, there are likely other parties who may be liable to Plaintiff, but about whom Plaintiff currently lacks specific facts to permit him to name these persons or entities as party defendants.  By not naming such persons or entities at this time, Plaintiff is not waiving his right to amend this pleading to add such parties, should the facts warrant adding such parties.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

20.    This Court has personal jurisdiction over Defendants because they: (a) operate, conduct, engage in and/or do business within this jurisdiction; (b) committed a tort in this jurisdiction; and/or (c) reside in this jurisdiction.

### Specific Jurisdiction

21.    This suit arises out of or relates to Defendants' contacts with this forum.

22.    Plaintiff has suffered harm in part because KUCOIN's unreasonably lax AML and KYC procedures encouraged hackers by providing them a marketplace where they could easily launder stolen digital assets.

23.    Likewise, ChangeNOW has knowingly failed to implement proper KYC and AML procedures facilitates violations of Anti-Money Laundering laws.

24.    Failing to implement and utilize adequate KYC and AML policies and procedures is tantamount to inviting, and then turning a blind eye to, fraudulent and criminal activity.

25.    The Court has specific personal jurisdiction over Defendants because at least one defendant: (i) transacts business in New York; (ii) has substantial aggregate contacts with New York; (iii) engaged in conduct that had a direct, substantial, and reasonably foreseeable and intended effect of causing injury to persons in New York; and (iv) purposely availed itself of the laws of New York.

26.    Exercising jurisdiction over Defendants in this forum is reasonable and comports with fair play and substantial justice.

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

**General Jurisdiction over KuCoin**

27.     This Court may assert general jurisdiction over a corporation if the corporation is incorporated in New York, if the corporation has its principal place of business in New York, or if the corporation's affiliations with New York are so "continuous and systematic" as to render it essentially at home here.  As explained below, KUCOIN enjoys a "continuous and systematic" presence in New York.

28.     From its inception in or about September 2017, KUCOIN has been owned and operated by and through one or more companies, including PEKEN GLOBAL.

29.     KUCOIN claimed to allow customers to "Trade Anytime, Anywhere."   In furtherance of this goal, KUCOIN's KYC procedures were either non-existent or a sham; and U.S. customers – including those in this jurisdiction -- were able to use KUCOIN's platform to trade cryptocurrency.

30.     Customers in the United States could create a KUCOIN account with only an email address or telephone number and engage in financial transactions without providing any proof of identity.  Furthermore, any purported written policies against serving U.S.-based customers were for appearances only, as KUCOIN did not even attempt to block U.S. customers based on their internet protocol ("IP") address location.

31.     From its founding in September 2017 until at least December 2023, KUCOIN served, and actively sought to serve, customers located in the United States, including within the Southern District of New York.   Moreover, U.S.-based customers were a critical part of KUCOIN's growth strategy, such that over the past few years, between 20% and 50% of KUCOIN's users were located in the United States.

32.     KUCOIN conducted a substantial portion of its business in the Southern District of New York, permitting users to open accounts, conduct transactions, and withdraw cryptocurrency

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

without providing identification in violation of U.S. laws and regulations. KUCOIN willfully violated these important U.S. laws and regulations to maximize fees and gain market share. KUCOIN's failure to implement an effective AML program along with its prioritization of growth, market share, and profits over compliance with U.S. law enabled KUCOIN to become one of the largest cryptocurrency exchanges in the world.

<u>The DOJ Action</u>

33.     KUCOIN was indicted by the U.S. Attorney for the Southern District of New York, and the Acting Special Agent in Charge of the New York Field Office of Homeland Security Investigations ("HSI"), for conspiring to operate an unlicensed money transmitting business ("MTB") and conspiring to violate the Bank Secrecy Act ("BSA") by willfully failing to maintain an adequate AML program designed to prevent KUCOIN from being used for money laundering and terrorist financing, failing to maintain reasonable procedures for verifying the identity of customers, and failing to file any suspicious activity reports. KUCOIN was also charged with operating an unlicensed MTB and a substantive violation of the BSA.

34.     The DOJ and Department of Homeland Security ("DHS") alleged, among other things, that KUCOIN deliberately chose not to help identify and drive out crime and corrupt financing schemes, failed to implement even basic AML policies, and allowed KUCOIN to be used as "*a haven for illicit money laundering, with KUCOIN receiving over $5 billion and sending over $4 billion of suspicious and criminal funds*."

35.     The March 26, 2024 press release jointly issued by the DOJ and DHS, which announced the unsealing of an Indictment against KUCOIN and its founders (the "DOJ Indictment"), stated in pertinent part as follows:

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

***KuCoin and Two of Its Founders, Chun Gan and Ke Tang, Flouted U.S. Anti-Money Laundering Laws to Grow KuCoin Into One of World's Largest Cryptocurrency Exchanges***

*Damian Williams, the United States Attorney for the Southern District of New York, and Darren McCormack, the Acting Special Agent in Charge of the New York Field Office of Homeland Security Investigations ("HSI"), announced today the unsealing of an Indictment against global cryptocurrency exchange KuCoin and two of its founders, CHUN GAN, a/k/a "Michael," and KE TANG, a/k/a "Eric," for conspiring to operate an unlicensed money transmitting business and conspiring to violate the Bank Secrecy Act by willfully failing to maintain an adequate anti-money laundering ("AML") program designed to prevent KuCoin from being used for money laundering and terrorist financing, failing to maintain reasonable procedures for verifying the identity of customers, and failing to file any suspicious activity reports. KuCoin was also charged with operating an unlicensed money transmitting business and a substantive violation of the Bank Secrecy Act. GAN and TANG remain at large.*

*U.S. Attorney Damian Williams said: "As today's Indictment alleges, KuCoin and its founders deliberately sought to conceal the fact that substantial numbers of U.S. users were trading on KuCoin's platform. Indeed, KuCoin allegedly took advantage of its sizeable U.S. customer base to become one of the world's largest cryptocurrency derivatives and spot exchanges, with billions of dollars of daily trades and trillions of dollars of annual trade volume. But financial institutions like KuCoin that take advantage of the unique opportunities available in the United States must also comply with U.S. law to help identify and drive out crime and corrupt financing schemes. KuCoin allegedly deliberately chose not to do so. As alleged, in failing to implement even basic anti-money laundering policies, the defendants allowed KuCoin to operate in the shadows of the financial markets and be used as a haven for illicit money laundering, with KuCoin receiving over $5 billion and sending over $4 billion of suspicious and criminal funds. Crypto exchanges like KuCoin cannot have it both ways. Today's Indictment should send a clear message to other crypto exchanges: if you plan to serve U.S. customers, you must follow U.S. law, plain and simple."*

*HSI Acting Special Agent in Charge Darren McCormack said: "Today, we exposed one of the largest global cryptocurrency exchanges for what our investigation has found it to truly be: an alleged multibillion-dollar criminal conspiracy. KuCoin grew to service over 30 million customers, despite its alleged failure to follow laws necessary to ensuring the security and stability of our world's digital banking infrastructure. The defendants' alleged pattern of skirting these vitally important laws has finally come to an end. I commend HSI New York's El Dorado Task Force and our law enforcement partners for their commitment to the mission."*

*        *        *

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

*Mr. Williams praised the outstanding investigative work of HSI New York's El Dorado Task Force. Mr. Williams further thanked the Commodity Futures Trading Commission, which today filed a parallel civil action against KuCoin.*

*This matter is being handled by the Office's Illicit Finance & Money Laundering Unit. Assistant U.S. Attorneys Emily Deininger and David R. Felton are in charge of the prosecution.*

36.    The DOJ Indictment alleged the following, among other things, against KUCOIN:

(a)  KuCoin sought to serve, and have in fact served, numerous customers located in the United States and in the Southern District of New York.

(b)  As a result, KuCoin has from inception been an MTB required to register with FinCEN and, since July 2019, has been an FCM required to register with the CFTC.

(c)  As an MTB and an FCM merchant, KuCoin is required to comply with the applicable BSA provisions requiring maintenance of an adequate AML program, including customer identity verification, or KYC processes.

(d)  KuCoin was aware of its U.S. AML obligations but willfully chose to flout those requirements. KuCoin failed, for example, to implement an adequate KYC program.

(e)  Until at least July 2023, KuCoin did not require customers to provide any identifying information. It was only in July 2023, after KuCoin was notified of a federal criminal investigation into its activities, that KuCoin belatedly adopted a KYC program for new customers. However, this KYC process applied to new customers only and did not apply to KuCoin's millions of existing customers, including the substantial number of customers based in the United States.

(f)  KuCoin never filed any required suspicious activity reports, never registered with the CFTC as an FCM, and, through at least the end of 2023, never registered with FinCEN as an MTB.

(g)  KuCoin affirmatively attempted to conceal the existence of KuCoin's U.S. customers to make it appear as if KuCoin was exempt from U.S. AML and KYC requirements. Despite the fact that KuCoin gathered and tracked location information for its customers, KuCoin actively prevented its U.S. customers from identifying themselves as such when opening KuCoin accounts.

(h)  In a number of social media posts, KuCoin actively marketed itself to U.S. customers as an exchange where they could trade without having to undergo KYC. For example, KuCoin stated in an April 2022 message on Twitter that "KYC is not supported to USA users, however, it is not mandatory on KuCoin to do KYC. Usual transactions can be done using an unverified account . . . ."

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

(i)   As a result of KuCoin's willful failures to maintain the required AML and KYC programs, KuCoin has been used as a vehicle to launder large sums of criminal proceeds, including proceeds from darknet markets and malware, ransomware, and fraud schemes.  Since its founding in 2017, KuCoin has received over $5 billion, and sent over $4 billion, of suspicious and criminal proceeds.   Many KuCoin customers used its trading platform specifically because of the anonymity of the services it provided.  In other words, KuCoin's no-KYC policy was integral to its growth and success.

(k)   KuCoin is charged with:

(i)   one count of conspiring to violate the BSA, which carries a maximum sentence of five years in prison;

(ii)   one count of conspiring to operate an unlicensed MTB, which carries a maximum sentence of five years in prison;

(iii)   one count of violating the BSA, which carries a maximum sentence of ten years in prison; and

(iv)   one count of operating an unlicensed MTB, which carries a maximum sentence of five years in prison.

<u>The CFTC Action</u>

37.    On March 26, 2024, the CFTC issued a press release and announced it had filed a civil enforcement action in the U.S. District Court for the Southern District of New York charging KUCOIN with multiple violations of the CEA and CFTC regulations.  The CFTC press release stated in pertinent part as follows:

> *The complaint charges KuCoin illegally dealt in off-exchange commodity futures transactions and leveraged, margined, or financed retail commodity transactions; solicited and accepted orders for commodity futures, swaps, and leveraged, margined, or financed retail commodity transactions without registering with the CFTC as a futures commission merchant (FCM); failed to diligently supervise its FCM activities; operated a facility for the trading or processing of swaps without registering with the CFTC as a swap execution facility (SEF) or designated contract market (DCM); and failed to implement an effective customer identification program (CIP).*

> *In its continuing litigation against KuCoin, the CFTC seeks disgorgement, civil monetary penalties, permanent trading and registration bans, and a permanent injunction against further violations of the CEA and CFTC regulations, as charged.*

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

*"For too long, some offshore crypto exchanges have followed a now-familiar playbook by offering derivative products and falsely claiming people in the United States cannot use their platforms, when in reality, anyone in the U.S. with commonly used technology can trade without providing basic customer identifying information," said Director of Enforcement Ian McGinley.*

*"As made clear by the CFTC's action today and its previous enforcement actions, the CFTC's playbook should also now be familiar – the CFTC will charge such entities with failing to register with the CFTC and failing to comply with the agency's rules that protect U.S. customers and prevent and detect terrorist financing and money laundering," McGinley continued.*

*Case Background*

*According to the complaint, KuCoin offered and executed commodity derivatives and leveraged, margined, or financed commodity transactions to and for people in the U.S. from approximately July 2019 to approximately June 2023, and failed to implement required know-your-customer (KYC) compliance procedures. The complaint further alleges that although KuCoin claimed to have implemented KYC procedures, those procedures were a sham and did not prevent U.S. customers from trading commodity interests and derivatives on the platform.*

*The complaint also alleges people who identified themselves as being U.S. customers were permitted to trade commodity futures, swaps, and leveraged, margined, or financed commodity transactions on the exchange, in violation of the CEA and CFTC regulations. KuCoin failed to impose any IP address restrictions during the relevant period to prevent U.S. customers from trading commodity interests or account for commonly used technology such as virtual private networks (VPNs) that could potentially circumvent IP address restrictions.*

*Related Criminal Action*

*In a separate criminal matter, the U.S. Attorney's Office for the Southern District of New York filed an indictment against PhoenixFin PTE Ltd., Flashdot Limited, and Peken Global Limited charging them with violating the Bank Secrecy Act, operating an unlicensed money transmitter business, and conspiracy to violate the Bank Secrecy Act and operate as an unlicensed money transmitter business.*

38.    The complaint filed by the CFTC (the "CFTC Complaint") alleges, among other things, that: (i) KUCOIN failed to restrict U.S. customers' access to KUCOIN's exchange from at least July 2019 and continuing to at least June 2023; (ii) KUCOIN's KYC verification was a sham;

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

(iii) KUCOIN publicly encouraged U.S. persons to avoid its KYC process; (iv) KUCOIN engaged in marketing activities targeting U.S. persons; and (v) KUCOIN sought U.S.-based investors and employees.

39.    Furthermore, the CFTC Complaint alleges, among other things, that from at least July 2019 and continuing to at least June 2023, KUCOIN violated core provisions of the CEA and CFTC regulations, including:

> (a)  offering, entering into, confirming the execution of, or otherwise dealing in, off-exchange commodity futures transactions or transactions described in §2(c)(2)(D) of the CEA, in violation of §4(a) of the CEA, 7 U.S.C. §6(a), or, alternatively, §4(b) of the CEA, 7 U.S.C. §6(b), and Regulation 48.3, 17 C.F.R. §48.3;

> (b)  soliciting and accepting orders for commodity futures, swaps, and retail commodity transactions or acting as a counterparty in any agreement, contract, or transaction described in §2(c)(2)(D)(i) of the CEA; and, in connection with these activities, accepting money, securities, or property (or extending credit in lieu thereof) to margin, guarantee, or secure resulting trades on KUCOIN, without registering as an FCM, in violation of §4d of the CEA, 7 U.S.C. §6d;

> (c)  operating a facility for the trading or processing of swaps without being registered as a swap execution facility or designated contract market, in violation of §5h(a)(1) of the CEA, 7 U.S.C. §7b-3(a)(1), and Regulation 37.3(a)(1), 17 C.F.R. §37.3(a)(1);

> (d)  failing to diligently supervise KUCOIN's activities relating to the conduct that subjects KUCOIN to CFTC registration requirements, in violation of Regulation 166.3, 17 C.F.R. §166.3; and

> (e)  failing to implement an effective customer identification program and to otherwise comply with applicable provisions of the BSA, in violation of Regulation 42.2, 17 C.F.R. §42.2.

<u>The NYAG Settlement</u>

40.    On December 12, 2023, the NYAG issued a press release announcing that NYAG Letitia James "*secured more than $22 million from KuCoin*" for failing to register as a securities and commodities broker-dealer and for falsely representing itself as a crypto exchange.  The December 12, 2023 stipulation and consent order in connection with the settlement (the "NYAG

Consent Order") resolved Attorney General James' March 9, 2023 lawsuit against KUCOIN and required KUCOIN to refund to over 150,000 New York investors more than $16.7 million and pay more than $5.3 million to New York State.  KUCOIN was also banned from trading securities and commodities in New York and from making its platform available to New Yorkers.  The press release also stated in pertinent part as follows:

> "Unregistered offshore crypto platforms pose a risk to investors, consumers, and the broader economy," said Attorney General James.  "Crypto companies should understand that they must play by the same rules as other financial institutions, and my office will hold them accountable when they don't.  This settlement will ensure every New Yorker who put their money into KuCoin can get it back and that KuCoin won't be able to put other New York investors at risk.  I will continue to take action against any company that brazenly disregards the law and jeopardizes New Yorkers' savings and investments."

> KuCoin is a Seychelles-based cryptocurrency trading platform that allows investors to buy and sell cryptocurrency through its website and mobile app.  An investigator from the Office of the Attorney General (OAG) was able to create an account with KuCoin using a computer with a New York-based IP address to buy and sell cryptocurrencies, including popular tokens like ETH, LUNA, and UST.  However, New York law requires securities and commodities brokers providing services in New York to register with the state, which KuCoin failed to do.  By trading cryptocurrencies that are commodities and securities with its New York users, KuCoin violated state law.  This included its own "KuCoin Earn" investment product, in which KuCoin pooled investors' cryptocurrencies to generate income for its investors.

> In addition, KuCoin claimed to be an exchange, but was not registered with the Securities and Exchange Commission as a national securities exchange or appropriately designated by the Commodity Futures Trading Commission as is required under New York Law.

41.     KuCoin admitted to the following facts, among others, in the consent order for the NYAG settlement:

> (a)   KuCoin admits that it operates a cryptocurrency trading platform on which users, including users in New York State, can purchase and sell cryptocurrencies which are securities or commodities as defined under the laws of New York State and that KuCoin is not registered in New York State as a securities or commodities broker-dealer;

> (b)   KuCoin admits that it represented itself as an "exchange" and was not registered as an exchange pursuant to the laws of New York State; and

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

(c)   while subject to market fluctuation, KuCoin attests that as of November 29, 2023, New York customers held assets with an approximate notional value of $16,766,642 worth of fiat and/or cryptocurrencies at KuCoin

42.     Indeed, as KUCOIN admitted on or about December 8, 2023 in the NYAG Consent Order, as of November 29, 2023, KUCOIN held approximately $16,766,642 in assets for New York customers.  These New York customers were identified based on a New York address, phone number, or IP address or GPS location in KUCOIN's records.  Therefore, even though KUCOIN purported to "block" U.S. customers from using its website, U.S.-based users continued accessing its platform.

43.     For all the foregoing reasons, this Court may assert general jurisdiction over KUCOIN.

### General Jurisdiction over ChangeNOW

44.     Upon information and belief, Defendant ChangeNOW services accountholders in this jurisdiction.

45.     Defendant ChangeNOW either conducts business in and maintains operations in this District -- including operating computer servers and storage vaults -- or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

46.     Additionally, as noted above, ChangeNOW allows U.S. customers – including those in this jurisdiction -- to trade on its exchange with virtual private networks (VPNs) that readily circumvent any IP address restrictions ChangeNOW purports to employ to prevent U.S.-based users.

47.     For all the foregoing reasons, this Court may assert general jurisdiction over ChangeNOW.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

## Venue

48.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because at least one Defendant resides in this jurisdiction.  Moreover, as foreign entities, KUCOIN and ChangeNOW may be sued in any judicial district.  *See* 28 U.S.C. §1391(c)(3).

## GENERAL FACTUAL ALLEGATIONS

49.     At times material hereto, Plaintiff maintained a cryptocurrency wallet connected to his account at a U.S.-based cryptocurrency exchange ("Plaintiff's Crypto Wallet").

50.     At times material hereto, Plaintiff maintained in his Crypto Wallet a cryptocurrency investment portfolio that included, among other assets, Bitcoin (BTC), Ether (ETH), and Avalanche (AVAX).

51.     On or about September 8, 2024, an unknown and unauthorized JOHN DOE infiltrated Plaintiff's Crypto Wallet account.

52.     As a direct result of the foregoing, JOHN DOE -- on September 8, 2024 -- stole from Plaintiff 40 BTC, 45.039 ETH, and 438.4324518567 AVAX that had been stored in Plaintiff's Crypto Wallet.

53.     Cryptographic tracing has shown that the assets forcibly transferred from Plaintiff's Crypto Wallet were transferred in a series of transactions to a collection of deposit addresses  -- including one at KUCOIN (the "KUCOIN Address") -- believed to be owned, controlled, and maintained by JOHN DOE, *to wit*:

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

| Owner (Address To) | Address To | Transaction Hash | Transfer Date (UTC) | Funds under claim (stated in cryptocurrency unit) |
|---|---|---|---|---|
| John Doe Private Wallet | bc1q7ghpph2r7jpr5jrn5vt0typ4rjy0vewkrllsgp | 6fa93477bf676ba21f9c01af01fa9a52c2f83443da5a4c45395ac7d29830a51f | 2024-09-08 06:11:48 | 21.99999302 BTC |
| John Doe Private Wallet | bc1qkdavn3fk5fqn24lwzf2sqfsa24ns0nnqa6cqdt | 6fa93477bf676ba21f9c01af01fa9a52c2f83443da5a4c45395ac7d29830a51f | 2024-09-08 06:11:48 | 18 BTC |
| KuCoin | 0xf595500188cF46d47600CeCa6098d7C8F8FE267f | 0x7ef5e523c4c32d6a37d70610040365c15d1426b797678c4533e301e949ba869d | 2024-09-08 13:50:00 | 45.039 ETH |
| Binance | 0xf595500188cF46d47600CeCa6098d7C8F8FE267f | 0x500cf1e79c23a2a4496160f2953ba50d849c28e094aa34323e418e387c4c2f46 | 2024-09-08 18:56:37 | 438.4324518567 AVAX |

54. Subsequently, the majority of the 18 BTC in the JOHN DOE Private Wallet bc1qk***6cqdt was transferred to a wallet at ChangeNOW, believed to be owned, controlled, and maintained by JOHN DOE, *to wit*:

| Owner (Address To) | Address To | Transaction Hash | Transfer Date (UTC) | Funds under claim (stated in cryptocurrency unit) |
|---|---|---|---|---|
| Change NOW | bc1qx2r6et0yqdgj93ury0kx4q2hjddvmwc780mqrm | 1dbf9a8dafbe55c13e8d3574c4501cd2c9c460889ea963a6e0d137155e56554d | 2024-09-14 00:50:21 | 17.71467942 BTC |

55. The JOHN DOE Private Wallets and the accounts/wallets held at KUCOIN, Binance, and ChangeNOW are collectively referred to herein as the "Destination Addresses."

56. As of the date of theft, the 40 BTC stolen from Plaintiff and sent to the JOHN DOE Private Wallets (a portion of which was later redirected to ChangeNOW) were valued at approximately Two Million Three Hundred Thousand Dollars ($2,300,000.00).

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

57.     As of the date of theft, the 45.039 ETH stolen from Plaintiff and sent to the KUCOIN Address were valued at approximately One Hundred Five Thousand Dollars ($105,000.00).

58.     As of the date of theft, the AVAX stolen from Plaintiff and sent to Binance were valued at approximately Ten Thousand Six Hundred Dollars ($10,600.00).

59.     Upon information and belief, the assets at issue traced to the Destination Addresses are still housed at there.

60.     Despite being one of the world's largest cryptocurrency exchanges, KUCOIN's KYC/AML protocols are shockingly lax and do not measure up to industry standards.  Thieves are able to launder stolen cryptocurrency through KUCOIN because KUCOIN has failed to implement security measures that are standard throughout the industry.

61.     KUCOIN's practice enabled, and still enables, skillful cryptocurrency hackers and thieves to steal cryptocurrency and launder it -- all without providing identification.

62.     KUCOIN provides an effective way for bad actors to steal and launder crypto. Once someone steals crypto stored in a wallet or in a protocol, they would deposit the stolen cryptocurrency into their KUCOIN wallet.  Next, they would engage in transactions within the exchange, trading the stolen cryptocurrency for other cryptocurrencies or tokens offered on the platform.  Once the funds were sufficiently converted, the thief would withdraw them from the exchange, potentially through multiple accounts or wallets, to further complicate tracing efforts. By leveraging the anonymity and liquidity provided by KUCOIN, individuals are empowered to launder cryptocurrency and evade detection.

63.     KUCOIN's refusal and failure to implement AML and KYC policies and protocols enabled bad actors like JOHN DOE to launder crypto at KUCOIN.  Had KUCOIN complied with

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

the law and implemented proper AML and KYC policies, KUCOIN would have identified potential crypto laundering transactions at KUCOIN and reported them to the authorities and would have prevented the crypto belonging to Plaintiff from being laundered at KUCOIN.

64.     As a direct and proximate result of KUCOIN's policies and failures, Plaintiff suffered financial harm when his cryptocurrency was stolen and laundered through KUCOIN.

65.     Much like KUCOIN, ChangeNOW employs shockingly lax KYC/AML protocols that fail to adhere to industry standards.

66.     ChangeNOW employs atypical policies related to the opening of accounts, deposits, and withdrawals without demanding from its accountholders any meaningful identification or KYC information;

67.     Additionally, ChangeNOW enables thieves to open an unlimited number of anonymous trading accounts on its exchange, thereby hindering detection and identification of the thieves.

68.     As a direct and proximate result of ChangeNOW's policies and failures, Plaintiff suffered financial harm when his cryptocurrency was stolen and laundered through ChangeNOW.

69.     As a result of the actions described above, Plaintiff has suffered damages in an amount that will be proven at trial.

70.     In asserting the claims herein, Plaintiff is not relying on any contracts or agreements entered into between KUCOIN or ChangeNOW and any users of KUCOIN or ChangeNOW to assert any claims alleged herein, and none of Plaintiff's claims derive from the underlying terms of any such contracts or agreements.  Plaintiff is not relying on any actions Defendants have taken or could have taken, or benefits Defendants have received or could have received, pursuant to the terms of any contracts or agreements with users of KUCOIN or ChangeNOW.  Rather, Plaintiff's

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

claims are based on Defendants engaging in the conversion of, and aiding and abetting the conversion of, cryptocurrency properly belonging to Plaintiff.

71.     Plaintiff duly performed all of his duties and obligations; and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or have been excused or waived.

72.     To enforce his rights, Plaintiff has retained undersigned counsel and is obligated to pay counsel a reasonable fee for its services.

## COUNT I – CONVERSION
### [AGAINST JOHN DOE]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1-72 above, and further alleges:

73.     On September 8, 2024, at the time of the theft, Plaintiff owned and had the right to immediately possess the 40 BTC, 45.039 ETH, and 438.4324518567 AVAX -- not just a mere right to payment for the value of those digital assets -- that was taken from him and transferred to the Destination Addresses.

74.     When the stolen cryptocurrency was deposited by a thief/thieves into the Destination Addresses, JOHN DOE intentionally took possession of and assumed control over the 40 BTC, 45.039 ETH, and 438.4324518567 AVAX.

75.     JOHN DOE has intentionally exercised control, and continues to exercise control, over the cryptocurrency in such a way as to exclude Plaintiff from using or possessing it.

76.     JOHN DOE knew the property he received was stolen or obtained in a manner constituting theft.

77.     As such, JOHN DOE wrongfully converted the 40 BTC, 45.039 ETH, and 438.4324518567 AVAX.

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

78.     JOHN DOE -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience JOHN DOE should not be permitted to hold.

79.     The cryptocurrency assets at issue are specific, identifiable property and can be traced in assets of JOHN DOE's account(s) at the Destination Addresses.

80.     As a direct and proximate result of the foregoing, Plaintiff suffered the wrongful conversion of personal property whose value exceeds Seventy-Five Thousand Dollars ($75,000.00).

## COUNT II – AIDING AND ABETTING CONVERSION
### [AGAINST KUCOIN]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1-72 above, and further alleges:

81.     This cause of action asserts a claim against KUCOIN for aiding and abetting the conversion of Plaintiff's stolen cryptocurrency assets.

82.     Plaintiff is not relying on any contracts or agreements entered into between Plaintiff and KUCOIN (as no such contracts exist) to assert any claims alleged in this count, and none of Plaintiff's claims in this count derive from the underlying terms of any such contracts or agreements.

83.     As noted above, JOHN DOE -- through actual fraud, misappropriation, conversion, theft, or other questionable tortious violations -- obtained Plaintiff's cryptocurrency, which in equity and good conscience JOHN DOE should not be permitted to hold.

84.     On September 8, 2024, at the time of the theft, Plaintiff owned and had the right to immediately possess the 40 BTC, 45.039 ETH, and 438.4324518567 AVAX -- not just a mere right to payment for the value of those digital assets -- that was taken from him and transferred to, *inter alia*, the account tied to the KUCOIN Address.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

85.    KUCOIN has actual knowledge that cryptocurrency stolen from Plaintiff had been transferred to the KUCOIN Address on KUCOIN's exchange by or to JOHN DOE.

86.    The cryptocurrency assets at issue which were deposited at KUCOIN are specific, identifiable property and can be traced in assets of JOHN DOE's account(s) at KUCOIN.

87.    Notwithstanding the actual knowledge of the theft of Plaintiff's cryptocurrency and the custody of those stolen assets in JOHN DOE's account at KUCOIN, KUCOIN did not prevent the deposit of the stolen cryptocurrency and has implemented no measures to halt the further movement of those stolen funds; which allows JOHN DOE to abscond with, and convert to his own benefit, Plaintiff's property.

88.    KUCOIN has rendered substantial assistance to JOHN DOE in his commission of the fraud, misappropriation, conversion, theft, or other questionable tortious activity through which JOHN DOE obtained Plaintiff's cryptocurrency.

89.    In addition, KUCOIN rendered substantial assistance to JOHN DOE by ignoring its own internal policies and procedures and by knowingly maintaining inadequate KYC/AML policies which enable skillful cryptocurrency hackers and thieves such as JOHN DOE to steal cryptocurrency and launder it through the KUCOIN ecosystem without providing identification.

90.    KUCOIN knew that its KYC and AML policies and procedures, including any tracing analysis of where funds originated, were nonexistent or inadequate.   Nevertheless, KUCOIN ignored those inadequacies and made no effort to utilize reasonable measures to remedy those dangerous shortcomings.  This amounts to "driving the getaway car" for the cryptocurrency thieves with full awareness of the harm being committed.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

91.    In effect, KUCOIN has consciously participated in the conversion of Plaintiff's stolen cryptocurrency, such that KUCOIN's assistance in the conversion was pervasive, systemic, and culpable.

92.    As a direct and proximate result of KUCOIN aiding and abetting the conversion of Plaintiff's stolen cryptocurrency, Plaintiff suffered the wrongful conversion of personal property whose value exceeds Seventy-Five Thousand Dollars ($75,000.00).

93.    Plaintiff is entitled to a return of his stolen assets or the value of his stolen cryptocurrency placed in the KUCOIN Address and an amount of damages to be proven at trial, plus interest.

## COUNT III – AIDING AND ABETTING CONVERSION
### [AGAINST CHANGENOW]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1-72 above, and further alleges:

94.    This cause of action asserts a claim against ChangeNOW for aiding and abetting the conversion of Plaintiff's stolen cryptocurrency assets.

95.    Plaintiff is not relying on any contracts or agreements entered into between Plaintiff and ChangeNOW (as no such contracts exist) to assert any claims alleged in this count, and none of Plaintiff's claims in this count derive from the underlying terms of any such contracts or agreements.

96.    As noted above, JOHN DOE -- through actual fraud, misappropriation, conversion, theft, or other questionable tortious violations -- obtained Plaintiff's cryptocurrency, which in equity and good conscience JOHN DOE should not be permitted to hold.

97.    On September 8, 2024, at the time of the theft, Plaintiff owned and had the right to immediately possess the 40 BTC -- not just a mere right to payment for the value of those digital assets -- that was taken from him and transferred to the Destination Addresses.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

98.     Subsequently, on September 14, 2024, JOHN DOE or someone acting at his behest transferred to ChangeNOW 17.71467942 BTC of the 40 BTC stolen from Plaintiff.

99.     ChangeNOW has actual knowledge that cryptocurrency stolen from Plaintiff had been transferred to the ChangeNOW Address on ChangeNOW's exchange by or to JOHN DOE.

100.    The cryptocurrency assets at issue which were deposited at ChangeNOW are specific, identifiable property and can be traced in assets of JOHN DOE's account(s) at ChangeNOW.

101.    Notwithstanding the actual knowledge of the theft of Plaintiff's cryptocurrency and the custody of those stolen assets in JOHN DOE's account at ChangeNOW, ChangeNOW did not prevent the deposit of the stolen cryptocurrency and has implemented no measures to halt the further movement of those stolen funds; which allows JOHN DOE to abscond with, and convert to his own benefit, Plaintiff's property.

102.    ChangeNOW substantially assisted and encouraged JOHN DOE's conversion of Plaintiff's BTC and ETH because, among other things: (1) ChangeNOW employed atypical policies related to the opening of accounts, deposits, and withdrawals without demanding from its accountholders any meaningful identification or KYC information; (2) ChangeNOW enabled the thieves to open an unlimited number of anonymous trading accounts on its exchange, thereby hindering detection and identification of the thieves; (3) ChangeNOW facilitated transactions on its exchange of stolen cryptocurrency, even though ChangeNOW had already learned that stolen cryptocurrency was being laundered through its exchange; and (4) upon information and belief, ChangeNOW either consciously implemented policies that were inadequate to prevent money laundering, or through its employees consciously failed to follow its own policies to prevent money laundering.

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

103.     In addition, ChangeNOW rendered substantial assistance to JOHN DOE by ignoring its own internal policies and procedures and by knowingly maintaining inadequate KYC/AML policies which enable skillful cryptocurrency hackers and thieves such as JOHN DOE to steal cryptocurrency and launder it through the ChangeNOW ecosystem without providing identification.

104.     ChangeNOW knew that its KYC and AML policies and procedures, including any tracing analysis of where funds originated, were nonexistent or inadequate.  Nevertheless, ChangeNOW ignored those inadequacies and made no effort to utilize reasonable measures to remedy those dangerous shortcomings.  As noted above, this amounts to "driving the getaway car" for the cryptocurrency thieves with full awareness of the harm being committed.

105.     In effect, ChangeNOW has consciously participated in the conversion of Plaintiff's stolen cryptocurrency, such that ChangeNOW's assistance in the conversion was pervasive, systemic, and culpable.

106.     As a direct and proximate result of ChangeNOW aiding and abetting the conversion of Plaintiff's stolen cryptocurrency, Plaintiff suffered the wrongful conversion of personal property whose value exceeds Seventy-Five Thousand Dollars ($75,000.00).

107.     Plaintiff is entitled to a return of his stolen assets or the value of his stolen cryptocurrency placed in the ChangeNOW Address and an amount of damages to be proven at trial, plus interest.

## COUNT IV – REPLEVIN
### [AGAINST JOHN DOE]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1-72 above, and further alleges:

108.     This is an action to recover possession of personal property.

109.     The property at issue is 40 BTC, 45.039 ETH, and 438.4324518567 AVAX.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

110.    Upon information and belief, the U.S. Dollar equivalent value of the personal property as of the date of theft is approximately Two Million Five Hundred Thousand Dollars ($2,500,000.00).

111.    As of the date of this filing, the personal property at issue is believed to be stored in the Destination Addresses delineated above which are believed to be owned or controlled by JOHN DOE or an unknown third-party to whom he has transferred those stolen assets.

112.    Plaintiff owned and had the right to immediately possess the personal property -- not just a mere right to payment for the value of those cryptocurrencies -- that was taken from him.

113.    JOHN DOE has intentionally exercised control, and continues to exercise control, over the cryptocurrencies in such a way as to exclude Plaintiff from using or possessing them.

114.    The property has not been taken for any tax, assessment or fine pursuant to law, nor has it been taken under an execution or attachment against Plaintiff's property.

## COUNT V - UNJUST ENRICHMENT
### [AGAINST JOHN DOE]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1-72 above, and further alleges:

115.    Plaintiff conferred a direct benefit upon Defendant JOHN DOE (albeit unwillingly so) by providing the extremely valuable cryptocurrency that Defendant stole from Plaintiff.

116.    Defendant has knowledge of the benefit Plaintiff conferred upon him and has retained such benefit.

117.    The circumstances under which Plaintiff conferred, and Defendant accepted, such benefit render Defendant's retention of the benefits inequitable.

118.    Equity requires that Defendant return to Plaintiff the benefits he conferred upon Defendant.

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JAY SOLEM, an individual, respectfully prays for relief as follows:

    (a) A judgment awarding Plaintiff equitable restitution, including, without limitation, restoration of the *status quo ante*, and return to Plaintiff all cryptocurrency or fiat currency taken from him in connection with the theft perpetrated upon Plaintiff by Defendant JOHN DOE;

    (b) The equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendant JOHN DOE, an individual, in the Destination Addresses; and entry of an Order that the wrongfully obtained property be restored to Plaintiff;

    (c) A judgment against Defendant PEKEN GLOBAL LIMITED d/b/a KUCOIN, a foreign company; for damages, including compensatory damages, interest, expenses, and any other relief the Court deems just and proper, including imposition of a constructive trust upon the property taken from Plaintiff that is held by JOHN DOE in an account(s) at KUCOIN;

    (d) A judgment against Defendant CHN GROUP, LLC d/b/a ChangeNOW, a foreign limited liability company; for damages, including compensatory damages, interest, expenses, and any other relief the Court deems just and proper, including imposition of a constructive trust upon the property taken from Plaintiff that is held by JOHN DOE in an account(s) at ChangeNOW;

    (e) An award of any and all additional damages recoverable under law including but not limited to compensatory damages, lost profits, expenses, treble damages, punitive damages, incidental damages, and consequential damages;

    (f) Pre- and post-judgment interest;

    (g) Attorneys' fees, expenses, and the costs of this action; and

    (h) All other and further relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## <u>RESERVATION OF RIGHTS</u>

Plaintiff reserves his right to further amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

Respectfully submitted,

**SILVER MILLER**

By: _/s/ Mimi Derle_____
MIMI DERLE
NYS Bar No. 5938303
E-mail: MDerle@SilverMillerLaw.com
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:     (954) 516-6000
  - and -
DAVID C. SILVER (*pro hac vice* forthcoming)
E-mail: DSilver@SilverMillerLaw.com
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:     (954) 516-6000

*Counsel for Plaintiff Jay Solem*

Dated:   September 14, 2024_____